UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LAUGHING RABBIT, INC.,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>LASER BONDING TECH., INC.,<br><br>　　　　　　　Defendant. | Cause No. C20-1513RSL<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

　　This matter comes before the Court on "Plaintiff's Motion for Summary Judgment on Count III (Registered Trademark Infringement) and Count IV (Registered Trademark Counterfeiting) and on Defendant's Affirmative Defenses." Dkt. # 31. Plaintiff alleges that defendant sells battery-operated portable electric lights with external, non-functional features that are substantially identical to plaintiff's trademarked lights. It seeks a summary determination of its trademark infringement and trademark counterfeiting claims, dismissal of defendant's laches, equitable estoppel, waiver, unclean hands, mitigation of damages, speculative damages, and statute of limitations defenses, and a declaration that certain asserted defenses are simply denials aimed at elements of plaintiff's claims. Defendant opposes the requested relief.

　　Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 1

judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018).

Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). Summary judgment is "disfavored in trademark infringement cases," but is nevertheless appropriate where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005); *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 2

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] and taking the evidence in the light most favorable to defendant, the Court finds as follows:

### BACKGROUND

Plaintiff manufactures and distributes battery-operated, LED, micro lights under the marks Freedom®, Photon®, Photon® II, and Photon® II Pro (collectively, "Photon® lights"). The lights are made of high-quality materials, including the casing, the LED, and the batteries, to exacting specifications, and they come with a no-questions-asked lifetime warranty.[2] Since 1997, the packaging plaintiff has used highlights to potential customers the ornamental shape of the Photon® lights and states that it is an "Original David Allen Design."[3] On December 9, 2003, the U.S. Trademark Office issued Trademark Registration No. 2,791,033 ("the '033 Registration") directed toward the product configuration, described as "a personal lighting device having a substantially diamond shaped main body in top plan view, consisting of major and minor axes, consisting further of wing-shaped appurtenances on each lateral side of the major axis of the main body centered about the minor axis of the main body." Dkt. # 32-8 at 2. The Photon® lights, with their trademarked shape, look generally like this:

---

[1] This matter can be decided on the papers submitted. Plaintiff's request for oral argument is DENIED. The Court has considered the declaration of Robert Harbauer to the extent his role as defendant's CEO would enable him to testify as to the category of goods defendant sells, where those goods are displayed at retail, and the design/shape of his competitors' UV micro lights.

[2] When plaintiff decided to offer a less expensive LED micro light option, it redesigned the housing and used the mark X Light®.

[3] David Allen is Laughing Rabbit's founder and president. He spent more than twenty years working as a professional jeweler, designing and hand-crafting individual pieces and sets which sold for thousands of dollars.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 3



Plaintiff identifies the most immediately appreciable ornamental features of the Photon® lights as "(i) the round wing-shaped appurtenances on each lateral side of the major axis of the main body and centered about the minor axis of the main body, (ii) the curvature of the perimeter of the casing along its length on both sides of the appurtenances, (iii) the appurtenances being sloped on one side of the casing, (iv) the appurtenances being substantially flat on the other side of the casing, (v) the substantially flat region adjacent the LED on both sides of the casing, (vi) the sloped portion opposite the LED on both sides of the casing where the casing defines an opening, (v) the radiused perimeter along the length of the casing on either side of the appurtenances, and (vi) the radiused edges along the perimeter of both sides of the casing." Dkt. # 32 at ¶ 33.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 4

Although the Photon® lights come in at least three body colors with a range of LED colors and functionality options, they all utilize the trademarked ornamental shape. Since at least October 2000, plaintiff has sold a version of its micro light with an ultraviolet ("UV") LED. Since at least October 2002, plaintiff has sold a version of its ultraviolet micro light with wavelength ranges of 395-405 nanometers, which was advertised as being useful for, among other things, to "accelerate curing glue," "curing UV-sensitive glue," and "curing certain inks, paints, coatings and adhesives." Dkt. # 32-10 at 2, # 32-11 at 2, and # 32-14 at 2.

Starting in 2014, defendant also began selling UV micro lights as part of a liquid plastic welding kit and as a replacement part for the kit. Defendant never marketed or sold its UV lights as a lighting device, but rather as part of a bonding/welding tool. Defendant's light can be used – and is sold -- with or without the orange handle that couples the light to a tube of resin glue.




ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 5

Defendant was unaware of plaintiff or the Photon® lights when it chose its LED's appearance, which is supplied by a Chinese manufacturer. Defendant sells or has sold the LED lights, alone and packaged with other products, on its own website and through third-party retailers. The external features of defendant's light are substantially identical to the Photon® light configuration, including the slopes, contours, perimeters, flat regions, dimensions, and overall shape. In fact, if the four screws that hold the light casings together are removed and the top, sloped half of each light is swapped and placed on the bottom, flat half of the other light, two complete light casings that are substantially identical to the Photon® lights are formed.





*See* Dkt. # 32-23 at 2. Defendant's LED lights are not made with glass-filled polyurethane, they use off-brand batteries, and they come with a limited, restricted warranty.

Plaintiff learned of defendant's lights in or around 2015 or 2016. The first attempts to locate the purveyor of "Bondic" lights failed, but a cease and desist letter sent to defendant in

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 6

2017 resulted in the cessation of online advertising for and brick-and-mortar retailing of defendant's LED lights. Plaintiff concluded that the letter had worked and that a lawsuit was unnecessary. Plaintiff has produced a forum discussion in which a customer mistakenly identifies defendant's LED light as a Photon® product and an on-line review in which a customer notes that defendant's product is a clone of the Photon® light. Dkt. # 33-18 and # 33-19.

## DISCUSSION

**A. Trademark Infringement**

To prevail on its claims of registered trademark infringement under the Lanham Act, 15 U.S.C. § 1114, "plaintiff must prove two basic elements: (1) it has a valid, protectable trademark, and (2) [the defendant's] use of the mark is likely to cause confusion." *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014) (internal quotation marks and citation omitted). Defendant does not seriously contest the validity, ownership, and use of the registered mark.[4]

The likelihood of confusion element focuses on the chance of consumer confusion regarding the source or origin of defendant's product and is generally analyzed through the lens of the eight factors enumerated in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir.

---

[4] Some of the facts set forth in the opposition memorandum suggest that defendant may in the future argue that the design of the Photon® lights is functional, not ornamental, and that registration was therefore improper. It has not made that argument here, however, instead focusing solely on the likelihood of confusion element of the Lanham Act claim. Dkt. # 60 at 20-25.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 7

1979). "These eight factors are: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012) (summarizing the "*Sleekcraft* factors"). The multi-factor analysis is "intended as an adaptable proxy for consumer confusion, not a rote checklist." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011). "In other words, we do not count beans. A determination may rest on only those factors that are most pertinent to the particular case before the court, and other variables besides the enumerated factors should also be taken into account based on the particular circumstances." *Rearden*, 683 F.3d at 1209 (internal quotation marks and citations omitted).

      The parties have starkly different views on how almost all of the *Sleekcraft* factors apply in this case, agreeing only on the fact that the product configurations are similar. Many of the factors are debatable based on the evidence in the record, giving rise to factual disputes which the Court will not resolve in the context of a motion for summary judgment. In particular, the jury could reasonably find that defendant had no intention of trading on plaintiff's mark, that there was minimal evidence of actual consumer confusion, and that the marketing and sale of defendant's UV micro lights as an original or replacement part of a welding kit, surrounded by packaging and emblazoned with marks that clearly identify defendant as the source of the

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 8

product, was unlikely to cause consumer confusion. Plaintiff has not shown that it is entitled to a declaration of infringement as a matter of law.

**B. Counterfeit Mark**

Plaintiff seeks an award of treble damages and/or enhanced statutory damages under 15 U.S.C. § 1117 on the ground that defendant's trademark infringement involves the use of a counterfeit mark. Plaintiff has not yet established a violation of § 1114(1)(a), however, making its claim for damages premature.

**C. Affirmative Defenses of Laches, Waiver, Estoppel, Unclean Hands, and Mitigation**

Defendants' equitable defenses are based solely on the facts that (i) plaintiff became aware of the allegedly infringing conduct in 2015 or 2016 and (ii) this lawsuit was filed in October 2020. Dkt. # 60 at 26 and 27. Defendant makes no attempt to show that the delay was unreasonable under the circumstances, that it has been prejudiced by or detrimentally relied on the delay, that plaintiff intended or manifested an intent to relinquish its trademark rights, that plaintiff acted in an inequitable manner, that mitigation was available, or that such efforts would have reduced the damages at issue in this case. Because defendant has failed to provide any facts from which a jury could find in its favor on these defenses, plaintiff is entitled to summary judgment on the laches, waiver, estoppel, unclean hands, and mitigation defenses.

**D. Speculative Damages**

Neither party has previewed the evidence regarding damages. Whether plaintiff's calculations and/or evidence are too speculative to support a claim for damages will have to be

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 9

determined at trial. However, to the extent the speculative damages defense is based on the assertion that plaintiff will not be able to show a likelihood of confusion, it would be a denial, rather than a defense. *See Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense.").

**E. Other Denials**

Defendants' sixth, seventh, and eighth affirmative defenses simply argue that plaintiff will be unable to prove one or more elements of its claims. They are not affirmative defenses and are therefore STRICKEN.

**F. Statute of Limitations**

The parties agree that plaintiff's Consumer Protection Act claim is subject to a four-year statute of limitations. Because the alleged conduct began more than four years before suit was filed, the limitations period may have some bearing on the damages available in this lawsuit. Plaintiff has not shown that it is entitled to judgment on this affirmative defense.

For all of the foregoing reasons, plaintiff's motion for summary judgment (Dkt. # 31) is GRANTED in part and DENIED in part.

Dated this 14th day of February, 2023.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 10